Filed 1/11/16  In re K.A. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re K.A. et al., Persons Coming Under the Juvenile Court Law. | |
| MARIN COUNTY HEALTH AND HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.M.,<br><br>        Defendant and Appellant. | A144894, A145722<br><br>(Marin County Super. Ct. Nos. JV25769A, JV25770A) |

J.M. (formerly J.C.; Mother) appeals orders denying her petition under Welfare and Institutions Code section 388[1] for reinstatement of services, granting her children's section 388 petition for reduced visitation, and terminating her parental rights.[2]  We affirm the orders denying Mother's section 388 petition and terminating her parental rights.  Therefore, we need not address the order granting the children's section 388 petition.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Orders regarding the section 388 petitions are the subject of appeal No. A144894, and the order terminating parental rights is the subject of appeal No. A145722.  By order filed concurrently herewith, the two appeals have been consolidated for purposes of decision.

1

## I.    BACKGROUND

In a prior nonpublished opinion, *J.C. v. Superior Court* (May 20, 2015, A143218), we reviewed the history of this dependency case and affirmed the trial court's prior orders terminating Mother's reunification services and setting a section 366.26 hearing. We briefly summarize the case background, which was more fully discussed in our prior opinion.

Mother had a history of substance abuse, mental health problems, and domestic violence. Her older children, a set of triplets, had been removed from her care in March 2009 and returned a year later. In April 2013, the triplets and Mother's younger children, six-month-old twins who are the subject of this dependency proceeding, were removed from Mother's care and she was offered reunification services. In September 2014, the court terminated Mother's services and set a section 366.26 hearing for the twins. In the meantime, Mother's parental rights to the triplets were terminated.

In reviewing the order setting the section 366.26 hearing for the twins, we wrote: "Mother's performance under the case plan [for the twins] was abysmal. Shortly after the twins' placement in protective custody, she started using methamphetamine and lived with [the twins' father (Father)] despite his continuing violence. She became paranoid and resisted substance abuse treatment. Although Mother entered an inpatient treatment program in June 2013, she was discharged in September after she engaged in an argument with other residents, broke a staff member's finger, and physically resisted the twins' being taken into protective custody. In October, Mother returned to Father despite his continuing violence against her and resumed using drugs. She enrolled in another residential treatment program but was discharged for hiding Father in her room. She then lived with Father on the streets, caused disruptions at her parents' house and threatened the social worker, leading to two separate restraining orders and the termination of her parent advocate services. She returned to drug use and life on the streets until she finally entered a third inpatient treatment program in March 2014. [¶] . . . She continued to harass her parents despite a restraining order and admonitions from the court. She declined psychotropic medications until about late July. . . . Mother's problems remained

so severe, and her record of responding to services was so disappointing, that the court quite reasonably concluded that the twins could not safely be returned to her care."

On January 21, 2015, while *J.C. v. Superior Court, supra,* A143218 was still pending before us, Mother filed a section 388 petition seeking reinstatement of reunification services and increased visitation. In a supporting declaration, she averred that in the period after her services were terminated in September 2014 she continued to reside at a residential treatment center, remained clean and sober, and took her prescribed medication even though she did not believe she needed it. She also was taking a domestic violence class and participating in a parenting group, and she had a job and a housing voucher.

On February 20, 2015, minors' counsel filed a section 388 petition seeking a reduction in visitation with Mother from twice to once a month, arguing the "lengthy travel time and long day in the car for the two hour supervised visit twice a month is very difficult for these two-year-old twins and very disruptive to their regular routine . . . , making it difficult to adjust after each visit."

On March 19, 2015, Marin County Health and Human Services (Agency) filed a status review report. The twins and triplets were living with their maternal aunt and grandparents at a confidential location outside Marin County. The twins were thriving in the placement. "They are extremely well cared [for] as evidenced by their health and development. They are active and inquisitive. They sing, dance, draw, kick balls and enjoy playing with each other very much. . . . They are entertained endlessly by their older siblings and vice versa." The twins' supervised visits with Mother went well. Mother "consistently brings food for the twins and often toys. She is attentive and appropriate in her visits. [She] actively plays with the children and encourages and praises them. At the end of the visit, [she] accompanies them to the [Agency's] car, puts them in the car seats, and kisses them good-bye. The children transition without difficulty into the car and back to their maternal aunt and grandmother." However, transportation to the visits required a 2.5 hour car trip each way, which disrupted the twins' sleep routines for the rest of the day and night. Also, a "continuing problem for

the family has been [Mother's] phone and text messages." After an admonishment from the court in June 2014, the harassment stopped for a while, but on about October 21, 2014, Mother "sent approximately 20 text messages in the late night and early morning," which "were full of anger and blame." Around Christmastime, the caretakers blocked Mother's phone number on their home phone.

The section 388 petitions were heard in March and April 2015. Mother argued she made a prima facie case that called for a hearing on her petition: she demonstrated changed circumstances by showing she was clean and sober, participating in services, and had a job and housing voucher; she showed reinstatement of services was in the twins' best interest because it is always in children's best interest to maintain a relationship with their mother. The Agency and minors' counsel argued Mother alleged only changing circumstances and was not yet ready to regain custody of the children, and that permanency should not be delayed for these children under three years of age who had been in the system since 2013. The court denied Mother's petition without a hearing. "[Mother] has made some progress, but the Court does not see that it's sufficient to disrupt the twins' path with relative placement . . . ." The court granted the children's petition, reducing visitation to once a month.

In a June 2015 addendum to its January section 366.26 report, the Agency wrote that the twins were continuing to meet their developmental milestones and were strongly bonded to their maternal aunt, who planned to adopt them. The twins called their aunt "mom" and called Mother by her first name; they easily separated from Mother at the end of visits; and they never asked about her or said that they missed her. In May 2015, Mother hacked into the maternal aunt and grandmother's email accounts, read their messages, and responded with a hostile text message to the grandmother.

A contested section 366.26 hearing took place on June 4, 2015. Mother presented evidence that she had been clean and sober for more than a year, was compliant with a prescribed psychotropic medication, had completed 25 weeks of domestic violence classes, remained separate from Father who had recently been released from custody, had employment and housing, and consistently visited the twins and acted appropriately

4

during visits. Mother testified that the twins called her "mom" during visits and the social worker who wrote the addendum report acknowledged that she did not have personal knowledge to the contrary, but had relied on the visitation supervisors' notes. Mother asked the court to apply the beneficial parental relationship exception to termination of parental rights. The Agency, minors' counsel, and the minors' court appointed special advocate all supported termination of parental rights. The court terminated Mother's parental rights to the twins on June 17, 2015.

## II. DISCUSSION

### A. *Denial of Mother's Section 388 Petition*

A parent "may, upon grounds of change of circumstance or new evidence, petition the court . . . to change, modify, or set aside any order of court previously made . . . . [¶] . . . [¶] If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ." (§ 388, subds. (a), (d).) "The court may deny the petition ex parte if: [¶] . . . the petition . . . fails to state a change of circumstance or new evidence that may require a change of order . . . or that the requested modification would promote the best interest of the child." (Cal. Rules of Court, rule 5.570(d)(1) ["Denial of hearing"].) "A petition for modification must be liberally construed in favor of its sufficiency." (*Id.*, rule 5.570(a).) The juvenile court's ruling on the petition is reviewed for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

A section 388 petition seeking reunification services after a section 366.26 hearing has been set plays a special role in the dependency scheme. "Once reunification services are ordered terminated, the focus shifts [from family reunification] to the needs of the child for permanency and stability. . . . The burden thereafter is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) The section 388 petition provides the parent a means of rebutting the presumption after termination of services that a permanent plan other than reunification is in the child's best interest. (*Id.* at p. 310.) In determining whether the proposed change is in the child's best interest, the court should consider:

"(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 532, italics omitted.) "A petition which alleges merely *changing* circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, italics added.)

The problems that led to this dependency proceeding were severe and multi-layered, involving longstanding substance abuse, domestic violence, and mental health issues. Mother had had multiple opportunities to address these problems during the dependency proceeding of the older triplets as well as the instant dependency case—over a period of about six years. Although the presumptive limit of reunification services in a case involving children under three years old is six months, extendable to 12 months if it appears the parent might reunify with them (§ 361.5, subd. (a)(1)(B); *In re Jesse W.* (2007) 157 Cal.App.4th 49, 59), Mother did not make significant progress in treating the aforementioned problems until more than a year after the six-month-old twins were removed from her care. Moreover, her progress was only partial: she continued to deny a serious mental illness and took prescribed medication only under protest, and she continued to harass the twins' relative caretakers. Because Mother was in a structured treatment program during most of this period, her ability to maintain stability and sobriety outside such a program had not been well-established. Similarly, because Father was incarcerated during most of the period, her ability to refrain from contact with him had not been well-established. Meanwhile, the twins were bonded with the maternal aunt and had a friendly relationship but not a parental bond with Mother. The trial court did not abuse its discretion in denying Mother's section 388 petition.

B. *Termination of Parental Rights*

The only ground on which Mother challenges the order terminating her parental rights is that the court erred in denying her prior section 388 petition. Because we have affirmed the order denying Mother's section 388 petition, we also affirm the order terminating her parental rights. That affirmance renders Mother's challenge to the order granting the twins' section 388 petition moot.

## III. DISPOSITION

The orders denying Mother's section 388 petition and terminating Mother's parental rights are affirmed. The appeal from the order granting the twins' section 388 petition is dismissed as moot.

_____

BRUINIERS, J.

WE CONCUR:

_____

JONES, P. J.

_____

NEEDHAM, J.

7